UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

UNITED STATES OF AMERICA                                                             Plaintiff

v.                                                                Criminal Action No. 4:23-CR-00002-RGJ-9

MORTON, ET AL.                                                                        Defendants

\* \* \* \* \*

### MEMORANDUM OPINION & ORDER

This matter comes before the Court on Defendant Ellis Parker's ("Parker") motion to suppress and exclude evidence. [DE 179]. Briefing is complete and the motion is ripe. [DE 185; DE 213]. For the reasons below Parker's motion to suppress [DE 179] is **DENIED**.

### BACKGROUND

On February 15, 2023, Parker was indicted along with eleven alleged co-conspirators for conspiracy to possess with intent to distribute methamphetamine. [DE 1, Indictment]. On February 22, 2023, police requested a search warrant for Parker's home at 2604 West 5th Street in Owensboro, Kentucky. [DE 179-1, Search Warrant Aff.]. The affidavit, offered by Detective Kristen Dirickson ("Dirickson"), stated that police had executed a search warrant at the home of one of Parker's "close friends" and co-conspirators, Johnny Albury ("Albury"). [*Id*. at 577]. During the search of Albury's home, Detective Fluery spoke with Katrina Shelton ("Shelton"), who reported that Albury kept his "money and illicit substances at Parker's residence." [*Id*.]. The affidavit also described Parker's home and identified the items to be found:

> any and all illegal controlled substances including, but not limited to marijuana, fentanyl, methamphetamine, or cocaine; drug paraphernalia including, but not limited to plastic baggies, corner baggies, scales, and needles; drug proceeds consisting of cash and coin; drug transaction records consisting of, but not limited to, notes, records, receipts and like showing money and/or drugs credited or debited, or which show ownership of illegal drugs, amounts fronted or owed, and

1

> identification of those individuals, cell phones and any and all information contained within the cell phone including saved numbers, texts, photos, voice-mails and videos, and any safes that cannot be opened on the scene, any and all surveillance equipment, storage devices, computers, hard drives, and any other equipment capable of holding information of illegal drug activity.

[*Id*. at 576]. The affidavit form also called for the officer to check applicable boxes classifying the items as stolen property, things used in commission of a crime, things intended to be used in commission of crime, among other things. [*Id*. at 577]. A search warrant was issued for Parker's home in reliance on the affidavit. [*Id*.].

## STANDARDS

I. <u>Probable Cause</u>

The Fourth Amendment requires that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. Amend. IV. "Probable cause is not a high bar." *United States v. Helton*, 35 F.4th 511, 517 (6th Cir. 2022) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)) (internal quotations and citation omitted). It "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Id*. (quoting *Illinois v. Gates*, 462 U.S. 213, 243–44, n. 13 (1983)). To establish requisite probable cause for a search warrant, an officer must submit an affidavit containing "facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005). The affidavit must establish a "nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998)).

When reviewing a finding of probable cause, courts are limited to the "four corners of the affidavit" and should "give great deference" to the issuing magistrate's determination. *Abboud*, 438 F.3d at 571 (citations omitted). Moreover, affidavits should be reviewed on a "totality of the circumstances determination, rather than a line-by-line scrutiny." *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001) (citing *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000)).

II.  *Leon* Good Faith Exception

The exclusionary rule prohibits the government from using evidence obtained in violation of the Fourth Amendment against a defendant at trial. Its purpose is to deter intentional police misconduct. *See United States v. Calandra*, 414 U.S. 338, 348 (1974) ("the [exclusionary] rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect"). Accordingly, evidence should not be suppressed if police obtained it "in objectively reasonable reliance" on the "subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). In *Leon*, the Supreme Court identified four circumstances when an officer's reliance on a search warrant would not be reasonable:

> (1) the magistrate was 'misled by information in the affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;' (2) the magistrate 'abandoned his judicial role' or neutrality; (3) the warrant was 'so lacking in indicia of probable cause' as to render official belief in its existence unreasonable; or (4) the warrant was so 'facially deficient' that it could not reasonably be presumed valid.

*United States v. McClain*, 444 F.3d 556, 564–65 (6th Cir. 2005) (quoting *Leon*, 468 U.S. at 923). The third circumstance is called a "bare bones" affidavit. *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017). A "bare bones" affidavit—distinct from one lacking probable cause—"must be *so* lacking in indicia of probable cause that, despite a judicial officer having issued a warrant, *no* reasonable officer would rely on it." *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017) (emphasis in original) (citation omitted). "If the reviewing court is 'able to identify in the averring

3

officer's affidavit some connection, regardless of how remote it may have been'— 'some modicum of evidence, however slight'— 'between the criminal activity at issue and the place to be searched,' then the affidavit is not bare bones and official reliance on it is reasonable." *Id.* (quoting *United States v. Laughton*, 409 F.3d 744, 749–50 (6th Cir. 2005)).

## ANALYSIS

Parker argues that the search warrant executed on his home lacked probable cause and no reasonable officer would have relied on it. [DE 179 at 571–72]. The United States contends that the affidavit was sufficient to support a finding of probable cause, and even if not, the *Leon* good faith exception applies to prevent the exclusion of evidence obtained during the search. [DE 185 at 596–600].

   I.   Probable Cause

   *a. "Boilerplate" Language*

First, Parker alleges that the affidavit contains "boilerplate" language insufficient to support a finding of probable cause. [DE 179, Mot. Suppress at 570]. While the affidavit form contained blanks for general statements, it also included a long list of items particular to drug trafficking. [DE 179-1 at 579]. And the Sixth Circuit has held such "boilerplate" arguments "are without merit because the fact that a search-warrant affidavit is an almost 'word-for-word' copy of the affidavit in a prior case is irrelevant '[a]s long as there is sufficient information to provide probable cause for the search.'" *United States v. Green*, 572 F. App'x 438, 441 (6th Cir. 2014) (quoting *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir.1996)) (alteration in original). Here, the affidavit contained multiple paragraphs of specific factual allegations. [*See* DE 179-1]. Whether or not those facts established probable cause, the officer's use of a standardized form does not render the entire affidavit "boilerplate."

### b. *Factual Inaccuracies*

Parker also alleges that the affidavit contained factual inaccuracies. [DE 179 at 570]. Specifically, he alleges that he "was not under arrest on February 22, 2023, at the time that Johnny Albury was arrested" and "had not been apprehended on a federal warrant for conspiracy to distribute methamphetamine at the time that this affidavit was used in obtaining the search warrant." [*Id*. at 570–71].

The Sixth Circuit has held "[a] defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden." *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). A defendant must "point to specific false statements" and "accompany his allegations with an offer of proof." *United States v. Cummins*, 912 F.2d 98, 101, 103 (6th Cir. 1990); *see Franks v. Delaware*, 438 U.S. 154, 171 (1978) (establishing the test for challenging the veracity of a search warrant affidavit). If a defendant makes this preliminary showing, the false statements are set aside and the court "review[s] what remains to decide the issue of probable cause." *Green*, 572 F. App'x at 442. Only if the remaining content is insufficient is the defendant entitled to a hearing on the veracity of the affidavit. *See Franks*, 438 U.S. at 172.

Parker claims that the assertation that he was arrested before the affidavit was submitted on February 22, 2023 is false. [DE 179 at 570–71]. Yet he has failed to "accompany his allegations with an offer of proof." *Cummins*, 912 F.2d at 103. He offers only conclusory allegations, unsupported by affidavit or explanation. *See Bennett*, 905 F.2d at 934 ("[A]llegations must be more than conclusory. . . [defendant] must accompany his allegations with an offer of proof. Moreover, he also should provide supporting affidavits or explain their absence.").[1] Because

---

[1] The United States has produced evidence showing that Parker was, in fact, arrested a 6:04 a.m., before the search warrant was issued at 8:14 a.m. [*See* DE 185-1].

5

Parker has failed to make a preliminary showing of falsehood, the Court will not exclude the fact of his arrest from its review of probable cause. *See Green*, 572 F. App'x at 442.

      *c.   Factual Basis*

Parker also argues that the affidavit did not support a finding of probable cause because it provided insufficient indicia of Shelton's reliability as an informant. [*Id*.]. In all, the affidavit set forth five facts in support of probable cause: (1) Parker was recently arrested on a federal warrant for conspiracy to distribute methamphetamine in the Western District of Kentucky; (2) during the search of co-conspirator Albury's home, Shelton advised that Albury keeps money and illicit substances at Parker's residence; (3) Shelton is believed to be reliable because of her "truthfulness throughout [the] investigation"; (4) Albury and Parker are "close friends" and "work together in trafficking illegal substances"; and (5) Dirickson's belief that Parker's residence contains illegal substances. [DE 179-1 at 577]. The issue before the Court is whether, considering the totality of the circumstances, these facts establish a "nexus between the place to be searched and the evidence sought." *Carpenter*, 360 F.3d at 594 (en banc) (quoting *Van Shutters*, 163 F.3d at 336–37).

A defendant's status as a drug dealer, standing alone, does not constitute probable cause that drugs will be found in their home. *Helton*, 35 F.4th at 520; *United States v. Brown*, 828 F.3d 375, 384 (6th Cir. 2016) ("if the affidavit fails to include facts that directly connect the residence with the suspected drug dealing activity, or the evidence of this connection is unreliable, it cannot be inferred that drugs will be found in the defendant's home—even if the defendant is a known drug dealer"). Instead, considering the totality of the facts, a search warrant affidavit must establish a nexus between a defendant's home and the evidence of their drug trafficking. *Id.*

Neither Parker's drug-related arrest nor his relationship to co-conspirator Albury, standing alone, supports a finding of probable cause to search his home at 2604 West 5th Street. *See Helton*,

6

35 F.4th at 520. In fact, the affidavit lacks any reference to activities observed at the home to be searched. [DE 179-1]. The only evidence linking drug trafficking to Parker's home is Shelton's statement that Albury stores money and drugs there. [*Id.* at 577].

When an affidavit relies on information from an informant, "examining the totality of the circumstances includes examining the 'veracity, reliability, and basis of knowledge' of the source." *Helton*, 35 F.4th at 518 (quoting *United States v. Hines*, 885 F.3d 919, 923 (6th Cir. 2018) (internal citation omitted)). Reliability concerns an informant's credibility. *United States v. Howard*, 632 F. App'x 795, 798 (6th Cir. 2015). Reports from known informants are entitled to more weight than those of anonymous informants "because (1) officers can assess the informant's reputation or otherwise evaluate her credibility, and (2) the threat of prosecution for filing a false statement is circumstantial evidence of veracity." *Id.* at 799. That said, known informant tips must still be supported by some indicia of reliability beyond mere disclosure of their identity. *Id.* (listing cases). An affiant's bare assertion that a known informant is reliable is insufficient. *See United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000) (citing *United States v. Reddrick*, 90 F.3d 1276, 1280 (7th Cir.1996)).

Dirickson's conclusion that Shelton is reliable because of "her truthfulness throughout this investigation" is unsupported. [DE 179-1 at 577]. The affidavit offers no details of Shelton's previous cooperation nor corroboration of her statements. *Cf. Howard*, 632 F. App'x 795 (holding probable cause existed where an affidavit provided no history of the informant's participation but showed that he worked with police to corroborate his own tip). While Shelton's identification by name in the affidavit offers some evidence of reliability, the Sixth Circuit has held that this alone cannot support a finding of probable cause. *See Howard*, 632 F. App'x at 801 ("Certainly, we would run afoul of [*Gates'*] admonition—and, indeed, the Fourth Amendment—were we to

7

declare that police can invade the sanctity of the home based on a warrant containing only an informant's name, full stop.")

The facts proffered in the affidavit fail to establish any nexus between the drug trafficking activity and the home to be searched. Thus, the issued warrant lacked probable cause and the search of Parker's home violated his Fourth Amendment rights. The Court turns now to application of the exclusionary rule.

## II.     *Leon* Good Faith Exception

Shelton's statements provided a minimal connection between Parker's residence and the drug trafficking activity, even if they did not support a finding of probable cause. Parker was a known associate of Albury's, and Shelton identified Parker's residence explicitly as one of his safehouses. [DE 179-1 at 577]. Additionally, the fact that Parker had been arrested on a federal warrant for conspiracy to distribute methamphetamine produced an inference that contraband would be found inside his home. *White*, 874 F.3d at 500 ("reasonable inferences that are not sufficient to sustain probable cause in the first place may suffice to save the ensuing search as objectively reasonable"). The Sixth Circuit has held that while this inference does not support a probable cause finding, "so long as the factual content is not 'so vague as to be conclusory or meaningless,' that inference is sufficient to permit reasonable reliance on the warrant." *Id*. (quoting *United States v. Carpenter*, 360 F.3d 591, 595–96 (6th Cir. 2004)). While none of the evidence taken alone supported a finding of probable cause, when taken together, a reasonable officer could rely in good faith on the issued warrant. *See id*. at 497. Thus, the exclusionary rule does not apply to evidence obtained during the search of Parker's home. *Leon*, 468 U.S. at 922.

## CONCLUSION

For the reasons stated, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that:

1) Parker's motion to suppress [DE 179] is **DENIED**.

January 16, 2024

Rebecca Grady Jennings, District Judge
United States District Court

9